UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAYMINKUMAR PATEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:08-cv-2270-G |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on December 24, 2008. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On March 10, 2006, plaintiff Jayminkumar Ramanbhai Patel (hereinafter "Plaintiff" or "Patel") protectively filed an application for Supplemental Security Income ("SSI"). (Administrative Record (hereinafter "Tr." at 63)). He alleged a disability onset date of June 1, 2003, *Id.*, and claimed disability due to extreme back pain, thoracic degenerative disc disease, arthritis, heartburn, constipation, "wobbliness" in leg and hand, high blood pressure, and high cholesterol. (Tr. 131). His claim was denied by the state agency initially and on reconsideration, after which he requested a hearing before an Administrative Law Judge ("ALJ").

The ALJ conducted a hearing on February 7, 2008, at which Plaintiff appeared with counsel and testified on his own behalf. (Tr. 9-57). The ALJ also received the testimony of

Medical Expert ("ME") Dr. John Billingshurst, M.D., and Vocational Expert ("VE") Suzette Skinner. *Id*. On February 28, 2008, the ALJ denied Plaintiff's request for benefits, finding that he had the severe impairments of hypertension, mild degenerative disc disease of the thoracic spine, and gout, (Tr. 65), but that, based on the testimony of the vocational expert, and considering Plaintiff's residual functional capacity ("RFC"), age, education, and work experience, Plaintiff was still capable of performing a modified range of sedentary work and therefore was not disabled. (Tr. 69). Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on September 18, 2008, the Appeals Council denied his request. (Tr. 2-4). Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002). Plaintiff filed his federal complaint on December 24, 2008. Defendant filed an answer on April 3, 2009. On July 31, 2009, Plaintiff filed his brief, followed by Defendant's brief on October 26, 2009.

<u>Standard of Review - Social Security Claims</u>: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F.2d at 1022 (citations

omitted). When the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

Discussion: To prevail on a claim for Supplemental Security Income ("SSI"), a claimant bears the burden of establishing that he is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." 20 C.F.R. § 416.910.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. Under the first four steps, a claimant has the burden of proving that his disability prevents him from performing his past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform. *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). This burden may be satisfied either by reference to the Medical-Vocational Guidelines ("grid rules") of the regulations, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, or by expert vocational testimony or other similar evidence. *See*, *e.g.*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). "A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the present case, the ALJ proceeded to step five. He found that Patel had not engaged

3

in substantial gainful activity since Match 10, 2006.[1] (Tr. 63, 65). Patel was 41 years old as of the date of the ALJ's decision, had a limited education,[2] and was able to communicate in English. (Tr. 15, 68). The ALJ found Patel to have a severe combination of impairments, to wit: "hypertension (well controlled), mild degenerative disc disease of the thoracic spine (arthritis) and gout (no medication prescribed)", (Tr. 65), but that the combination of his impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

Based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and a residual functional capacity for a modified range of sedentary work, the ALJ found that there were a significant number of jobs in the national economy that Patel could perform, including the representative occupations of "charge account clerk" with 2,900 jobs in Texas and 38,000 jobs in the national economy, "order clerk" with 3,700 jobs in Texas and 51,000 in the national economy, and "telephone quote clerk" with 6,700 jobs in Texas and 93,000 in the national economy. (Tr. 68-69). He therefore concluded that Patel was not under a disability and denied his claim for benefits. (Tr. 69). Patel argues that the ALJ failed to

---

[1] The ALJ's decision does not elaborate on his finding that Patel ceased substantial gainful activity as of his filing date, March 10, 2006, instead of his alleged onset date, June 1, 2003. However, in a disability report completed on March 16, 2006, Patel was "not cooperative in answering questions about his job activities." (Tr. 128). In a second disability report, which is undated, he stated that he has been working part-time since June 1, 2003 due to his conditions. (Tr. 131). In describing this part-time work, he stated "I have been working as a middle person between the customer and printing co. since 2003. I talk to customers on the phone to receive printing jobs and have them send (sic) to the printing co. to get the print job done. I do not pick up and deliver any products. I spend about 2 hours a month to talk to customers and about 10-15 minutes to talk to the printing co." (Tr. 139).

[2] Patel stated during the hearing that he completed the 12th grade and had a high school diploma, (Tr. 15), however, in his disability report, the highest grade of school completed is listed as 10th grade. (Tr. 138). The ALJ found Patel to have "a limited education". (Tr. 68 ¶ 7).

analyze or recognize that he suffers from a severe mental impairment, and that the ALJ failed to properly analyze or weigh the opinion of his treating physician, Dr. Christopher Garrison, M.D.

**First**, Patel argues that the ALJ failed to analyze or recognize that he suffers from a severe mental impairment. In support of this argument, Patel refers to reports of nervousness, tension, anxiety, and irritability. (Tr. 227, 247-248). These reports were completed in August 2000 and May 2004 on checklist-style forms that were completed by the Plaintiff. *Id*. Moreover, as the Commissioner points out, Patel continued to work full-time until the date he alleged disability, June 1, 2003, (Tr. 131), and continued to work part-time until at least March 2006. (Tr. 139). In March 2006, Plaintiff claimed that his mental impairments were greatly affecting his ability to drive, (Tr. 353), however, at the hearing before the ALJ he testified that he drove himself to the hearing, drives his son to school on a regular basis, and his ability to drive is limited by arthritic pain in his toe- when specifically asked about his driving by the ALJ, Patel made no mention of mental limitations. (Tr. 15).

Patel refers to a March 2007 report by his treating physician Dr. Garrison (the report is actually dated June 6, 2007), where Dr. Garrison "opined that Plaintiff's pain would cause marked hardship in the performance of the activities which precipitate the pain, and would restrict his ability to maintain concentration." (Pl. Br. 5, Tr. 532-534). This opinion consists of a checked box on a checklist-style form titled "physical capacities evaluation", which contains no explanation or support for the findings. *Id*.

Patel also refers to his testimony at the hearing, where he stated his pain affected both his memory and concentration. (Tr. 38-41). At the hearing, Patel stated that he sometimes has a hard time remembering things. (Tr. 38). His attorney followed-up, asking him if he had

5

problems with memory and concentration, at which point the ALJ asked the attorney "are we going to go into a mental case or is this a physical case?" (Tr. 39). The attorney responded that it was a physical case, and he was asking in order to elaborate on the possible side-effects of Plaintiff's medication. *Id*. When asked why he thought he had difficulties with concentration, Patel responded "[i]t's the sharp pain and I guess medication effect." (Tr. 41).

Patel did not allege mental impairments as a disabling condition in his application documents, (Tr. 126-139), however, he did state "I am very depress, (sic) because I cant participate with daily activities with my family, and I am very disappointed with my life, as I cant do lots of things like I use (sic) to." (Tr. 146). The state agency medical consultant ("SAMC") followed up with Patel on this statement, documented that Patel felt this way because of his constant pain, and determined that further mental development was not warranted. (Tr. 150). "The claimant has the burden of proving his disability and the ALJ has a duty to fully develop the facts, or else the decision is not supported by substantial evidence. The ALJ's duty to investigate, though, does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (citations omitted). Patel did not allege that he suffered from a severe mental impairment in his disability application documents or at his administrative hearing, and the medical evidence of record does not support a finding of a mental impairment.

It is within the ALJ's discretion to determine the disabling nature of a claimant's physical pain, as well as whether a non-exertional impairment is disabling. *E.g., see Spruill v. Astrue*, 299 Fed.Appx. 356, 358 (5th Cir. 2008). Plaintiff failed to show that he was unable to perform the modified range of sedentary work which the ALJ found him to be capable of performing.

*See*

 *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990)*; see also Fraga, supra* 810 F.2d at 1301-1302 (If the Secretary fulfills his burden of pointing to potential alternative employment, the burden shifts back to the Plaintiff to prove he is unable to perform the alternate work).  The ALJ applied the proper legal standards, and his findings are supported by substantial evidence.

**Second**, Patel argues that the ALJ failed to properly analyze or give proper weight to the opinion of treating physician Dr. Garrison.  Specifically, Patel refers to two "physical capacities evaluation" forms completed on June 7, 2007 (Tr. 533-534) and July 6, 2007.  (Tr. 541-544).  These forms, one of which was referenced above in Plaintiff's first argument, are checklist-style forms which contain no explanation or support for the findings.  Patel argues that the ALJ improperly relied on the opinion of the medical expert rather than Dr. Garrison, and at the very least had a duty to further evaluate and investigate Dr. Garrison's opinions.

During his testimony, the ME summarized Plaintiff's medical treatment records, discussing records from 1999-2007.  (Tr. 42-47).  He discussed the opinions of Dr. Garrison, including those found in the June and July 2007 evaluation forms, and compared the findings of Dr. Garrison against the Plaintiff's history with other treating physicians.  (Tr. 44-45).  Overall, the ME stated that Patel had a nine or ten year history of thoracic back pain.  (Tr. 42).  Patel saw orthopedic surgeons Dr. Abbass Sekhavat, M.D., Dr. Charles J. Banta, M.D., and Dr. Richard L. Vera, M.D. between 1999-2001.  (Tr. 42-43, 224-314, 347-410).  The ME stated that Patel was seen infrequently in 2003 through 2005 by his family doctor, Dr. Palaniappan Arumugham, M.D.  (Tr. 43, 315-344, 417-530).  He had a MRI on July 17, 1999 showing mild degenerative disc disease and had x-rays of his thoracic spine in May 2006, but the ME found no other records

7

of imaging being done on Patel's back, and stated that Patel had multiple normal neurologic exams throughout the record. (Tr. 42-43).

In his decision, the ALJ discussed the medical evidence from two of Patel's treating physicians- Dr. Vera and Dr. Garrison. (Tr. 67). The ALJ noted that on April 16, 2003, Plaintiff was evaluated by Dr. Vera, and that he had reportedly been doing well with his medication regimen. On examination, his lower motor strength was 5/5, sensory was intact to pin prick and light touch, he had negative straight leg raise, some thoracic paraspinous muscle spasm was noted, his gait was normal, and he was able to heel/toe stand. The doctor's impression was "thoracic degenerative changes, low back pain and bilateral foot pain." (Tr. 67). During a consultative evaluation with Dr. Mahmood Panjwani, M.D., on May 27, 2006, Patel exhibited normal gait and station, full range of motion of the back, some degree of muscle spasm around the thoracic spine, and motor strength was 5/5 in all muscle groups. The doctor's assessment was chronic mid to lower back pain and arthritis. (Tr. 67).

In 2007 Dr. Garrison completed his residual functional capacity assessments, which the ALJ attributed little weight to as they were "inconsistent with one another" in that the June assessment (Tr. 533) stated Patel could "occasional[ly]" lift and carry 5-10 pounds and the July assessment (Tr. 543) stated Patel could "never" lift and carry 5-10 pounds. (Tr. 67). The June assessment stated Patel could sit, stand, and walk for 2 hours in an 8 hour workday, and "occasionally" bend and reach, with no squatting, crawling, or climbing. (Tr. 533-534). The July assessment stated Patel could sit for 2 hours and stand or walk for less than 2 hours in an 8 hour workday, "rarely" twist, bend, crouch, and squat, with no climbing. (Tr. 541-544). The ALJ ultimately found that Plaintiff had the RFC to "lift up to 10 pounds maximum", stand 2

8

hours and sit for 6 hours in an 8 hour workday, changing positions to stretch for 2-3 minutes during 30-45 minute intervals, with no climbing or balancing and the "remainder of posturals" occasional[ly.  (Tr. 65).  The ALJ stated that the RFC finding was based on the medical evidence of record and the testimony at the hearing.  *Id*.

"[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir.2000); *see also Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994).  Moreover, the determination that a claimant is unable to work is a legal conclusion reserved exclusively to the Commissioner.  *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *see also* 20 C.F.R. § 404.1527(e)(1).  In this case, the ALJ reviewed the medical evidence of record and determined that the checklist-style forms submitted by Plaintiff's treating physician were entitled to little weight.  Nevertheless, his RFC finding incorporates some of the limitations found in those forms.  His finding is supported by substantial evidence in the record.  Further, Patel offered no evidence that he was incapable of performing the types of work that the ALJ determined were available and that he was capable of performing, and he therefore failed to meet his burden of proof under step five of the disability test.  *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995), citing *Selders, supra*, 914 F.2d at 618.  The ALJ's decision that Plaintiff was "not disabled" is supported by substantial evidence.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the District Court enter its order

9

AFFIRMING the decision of the Commissioner and its judgment DISMISSING this action with prejudice. A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 24th day of November, 2009.

_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

### NOTICE

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.